**BARTHEL LEGAL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

*Attorney for Plaintiff*
*BRIAN BOHAN,*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**BRIAN BOHAN,**

Plaintiff

**v.**

**CITIBANK, N.A.; EXPERIAN INFORMATION SOLUTIONS INC; EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION, LLC**

Defendants

**Case No.:** '25CV1571 DMS BLM

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF A.**

1. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT;**
2. **FAIR CREDIT REPORTING ACT.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. This case is a tragic tale where a simple mistake snowballed into a financial disaster all because CITIBANK N.A. ("Citibank") refused to admit it was wrong. As a result of Citibank's refusal to take responsibility, BRIAN BOHAN's ("Mr. Bohan" or "Plaintiff"), life was turned upside down.

2. Mr. Bohan set up autopay with Citibank and it was confirmed that it had been set up. Yet for some reason Citibank did not set up the autopay. As a result, Citibank did not pull the payment as Mr. Bohan had instructed and despite the money being available, resulting in Citibank reporting two misleading delinquencies on Mr. Bohan's credit report.

3. Despite admitting to its error, Citibank has continuously refused to remove the delinquent remark.

4. Mr. Bohan also brings this action to challenge the actions of Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC, ("Equifax"), and TransUnion, LLC, ("TransUnion") (collectively "Credit Bureaus") for their refusal to investigate this clear error and continued reporting of the delinquent marks despite knowing they were a result of Citibank's error.

5. As a result of these 30-day and 60-day delinquent marks, Plaintiff has suffered extensive damages, including a decrease in available credit on his personal credit cards, inability to use his credit, and even a loss of income.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in took place in California.

8. Any violations by each Defendant were knowing, willful, and intentional, and did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of each Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and

insurers of Defendant.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court, and this case involves the violation of California statutes.

11. Venue is proper for the following reasons: (i) Plaintiff resides in Encinitas, which is within this jurisdiction; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

12. This action arises out of violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq.* ("CCCRA"); and the Fair Credit Reporting Act 15 USC § 1681, *et seq* ("FCRA").

13. Because Defendants conduct business within the State of California, personal jurisdiction is established.

## PARTIES

14. Plaintiff is a natural person who resides in Encinitas, California, about whom Citibank has reported misleading credit information.

15. Citibank is a bank operating from the State of South Dakota that regularly reports information about consumers to credit reporting agencies.

16. Experian is a corporation operating from the State of California.

17. Equifax is a limited liability company located in the State of Georgia.

18. Trans Union is a limited liability company located in the State of Illinois.

## FACTUAL ALLEGATIONS

19. Mr. Bohan has a Citibank Simplicity credit card that is operated by Citibank, account ending in 6758 ("Credit Card").

20. On or about October 23, 2024, Mr. Bohan contacted the number on the back of his credit card to set up auto pay in the amount of the minimum amount due each month.

21. When speaking with the Citibank representative, Mr. Bohan received confirmation that the auto pay was established to pay the minimum amount due each month using the routing and checking account number Mr. Bohan provided.

22. A few months went by during which Mr. Bohan believed the auto pay established was paying his Citibank credit card bill.

23. In or about December 2024, Mr. Bohan realized that his credit card was not being paid as arranged and called Citibank for clarification.

24. In or about December 2024, Mr. Bohan successfully updated his auto pay information with Citibank to avoid further negative reporting on his credit report.

25. On January 13, 2025, Citibank's executive office spoke with Mr. Bohan, at which point Mr. Bohan received confirmation of his discussion with a representative on October 23, 2024.

26. During this call Citibank's executive office also stated the representative who took the call had been reprimanded as the auto pay information was input incorrectly and that there had been a miscommunication and misrepresentation during the call.

27. Because the Citibank representative had input Mr. Bohan's auto pay information incorrectly, Citibank reported Mr. Bohan as 30 and 60 days late in payments on his credit report.

28. Mr. Bohan requested the late payments be removed from his credit report, but Citibank refused to remove them despite admitting to their error.

29. The misleading credit reporting has caused Mr. Bohan's credit score to drop over 100 points.

30. In or about January 2025, Mr. Bohan submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") regarding Citibank's refusal to remove the late payments from his credit report.

31. In this letter, Mr. Bohan detailed the fact that he had yet to receive his credit card statements from Citibank and Citibank's failure to send him statements and invoices despite his specific requests for them. Mr. Bohan also explained that he had

called to set up autopay, and despite confirming it was set up, Citibank for some reason never set up the autopay.

32. On January 9, 2025, Citibank sent a letter to Mr. Bohan regarding the CFPB complaint in which Citibank confirmed the accuracy of the late reporting to the credit bureaus and declined to remove the 30- and 60-day late marks from his credit report.

33. On January 22, 2025, Citibank sent another letter to Mr. Bohan regarding the CFPB complaint in which Citibank stated their position remained unchanged and the negative reporting would not be removed from Mr. Bohan's credit report despite the call on January 13, 2025.

34. Despite Mr. Bohan's repeated attempts, Citibank continues to report to the credit reporting agencies these misleading delinquencies that were the result of Citibank's error, not Mr. Bohan.

## DISPUTES WITH CREDIT BUREAUS

35. Mr. Bohan disputed the above with Experian in late 2024, to which Experian stated that it verified Citibank's prior reporting on January 4, 2025.

36. Mr. Bohan disputed the above with Equifax in late 2024, to which Equifax stated that it verified Citibank's prior reporting on January 6, 2025.

37. On March 18, 2025, Mr. Bohan sent via certified mail detailed dispute letters to each of the Credit Bureaus.

38. Mr. Bohan again explained in his dispute that he called Citibank to set up autopay and was told that it had been set up. Yet, some error happened on Citibank's side as the payment was never processed despite Mr. Bohan having the available funds in his account.

39. Mr. Bohan also explained that Citibank has acknowledged the error but is refusing to correct its credit reporting. Thus, the Credit Bureaus need to conduct and independent investigation.

40. On April 10, 2025, Mr. Bohan received dispute results from Experian in which Experian stated that it would verify the delinquent marks as accurate.

41. On April 29, 2025, Mr. Bohan received dispute results from Trans Union in which Trans Union stated that it would verify the delinquent marks as accurate.

42. On May 27, 2025, Mr. Bohan called Equifax for the results of his dispute. During this call Equifax advised that the closing action was "do not send results." A letter with this information was not sent to Mr. Bohan and the Citibank account remains unchanged.

43. As a direct and proximate result of Defendants' willful action and inaction, Mr. Bohan has suffered actual damages, including, but not limited to, reviewing credit reports, preparing dispute letters, mental and emotional pain and anguish, including a constant fear for his job as his work as a mortgage officer requires a minimum credit score. Mr. Bohan has further spent countless hours and suffered pecuniary loss attempting to correct the inaccurate and derogatory information, without success.

44. Mr. Bohan is also frustrated and angry because Citibank has admitted to the error, yet Defendants refuse to remove the misleading inaccuracy. Mr. Bohan has experienced difficulty in finding energy and have felt unmotivated to continue working. Mr. Bohan would consider himself as being depressed.

45. Mr. Bohan thinks about his credit every day and feels like he is constantly haunted by this delinquency. It feels like a storm cloud that is following him around.

46. Furthermore, Mr. Bohan has lost access to credit, as several of his credit cards were decreased dramatically, including but not limited to Mr. Bohan's Costco card, Venmo credit card, and Bank of America card decreased from $15,000 to $4,300.

47. Mr. Bohan owns a mortgage broker business and consequently good credit is vital to him. Mr. Bohan thus feels a lot of shame and embarrassment having these delinquents being associated with him. Mr. Bohan feels like he is walking on a tight rope all the time waiting for the shoe to drop and be ostracized by his working community due to these delinquency falsely claiming he has bad credit.

48. Mr. Bohan would also like to do a cash refinance of his mortgage on his home.

However, Mr. Bohan knows from his work experience that he would be denied.

49. Mr. Bohan also fears that someone might pull his credit and see that he has delinquencies and then terminate a relationship with one of his banks because of this.

50. Mr. Bohan has fallen on hard times since a slowdown in the housing market and thus he is interested in rolling over debt into zero APR offers. However, Mr. Bohan has had to reject offers from other companies, such as AAA, that were providing zero APR offers. Mr. Bohan has read the terms and knows that he would not be accepted because of these delinquencies. These are offers that he would have applied for had he not been embarrassed by what was on his credit report.

51. Based on the discussion above, punitive damages are available.

52. The continued inaccurate credit reporting despite Citibank's own admittance of wrongdoing shows that all Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should have been known.

53. Since Plaintiff's efforts to be absolved of the fraudulent reporting were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

## CAL. CIV. CODE § 1785.1, ET SEQ.

54. Mr. Bohan incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55. As discussed above, Mr. Bohan is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c).

56. Credit Bureaus are each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

57. Citibank is a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

58. As detailed above, the causes of action herein also pertain to "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of credit worthiness, credit standing, and credit capacity were made via written, oral or other communication of information by a consumer credit reporting agency, which is used or expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

59. The previously mentioned acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

60. In the regular course of its business operations, Citibank routinely furnishes information to credit reporting agencies pertaining to transactions between Citibank and their consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

61. Because Citibank is a partnership, corporation, association, or other entity, it is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j). Citibank is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.3(a).

62. Since Citibank received all documents required to determine the inaccuracy of their reporting, and even admitted fault, Citibank should have known to update said recording.

63. Citibank also should have determined that their reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided by Mr. Bohan.

//

//

**COUNT II**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681-1681X (FCRA)**

**[AGAINST ALL DEFENDANTS]**

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. As discussed above, Plaintiff is a “consumer” as that term is defined by 15 U.S.C. § 1681a(c).

66. Citibank is a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

67. Credit Bureaus are each a “consumer reporting agency” as that term is defined by 15 U.S.C. § 1681a(f).

68. The previously described acts and omissions constitute numerous and multiple violations of the FCRA.

69. Citibank was required to conduct a reasonable reinvestigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

70. As described above, Citibank failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

71. Citibank failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

72. Due to Citibank’s failure to reasonably investigate, Citibank further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in

violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

73. By inaccurately reporting account information after notice and confirmation of its errors, Citibank failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

74. The Credit Bureaus were also required to conduct their own reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

75. Plaintiff received notification from the Credit Bureaus that the furnisher and the Credit Bureaus received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.

76. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's disputes with the Credit Bureaus was fruitless.

77. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

78. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

79. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

80. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

81. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

82. As a result of each and every willful violation of the FCRA, Plaintiff is entitled

to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against each respective defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and Cal. Civ. Code § 1785.31(d);
- An award of punitive damages of $100-$5,000 per willful violation of 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- Punitive damages according to proof as to FCRA and CCRAA;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31 (b);
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) for each incident of negligent

noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) for each incident of noncompliance of the FCRA;
- Cal. Civ. Code § 3294 and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

Pursuant to the United States' Constitution, Plaintiff is entitled to, and demands, a trial by jury.

Dated: 18 June 2025

Respectfully submitted,

**BARTHEL LEGAL, APC**

By: _/s/ Nicholas Barthel___
NICHOLAS R. BARTHEL, ESQ
ATTORNEY FOR PLAINTIFF

https://www.barthelbarthel.com/