JONES DAY
Nicholas J. Rawls, Bar No. 349996
nrawls@jonesday.com
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071.2452
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

Attorney for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC

(caption continued on next page)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BOHAN,<br><br>Plaintiff,<br><br>v.<br><br>CITIBANK, N.A.; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION, LLC,<br><br>Defendant. | Case No. 3:25-cv-01571-DMS-BLM<br><br>Hon. District Judge Dana M. Sabraw<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF BRIAN BOHAN'S FIRST AMENDED COMPLAINT**<br><br>Complaint filed: June 16, 2025<br>Hearing: March 13, 2026 at 1:30 p.m. |

NOKES & QUINN
Thomas P. Quinn, Jr., Bar No. 132268
410 Broadway, Suite 200
Laguna Beach, CA 92651
Tel: (949) 376-3500
Fax: (949) 376-3070
Email: tquinn@nokesquinn.com

Attorney for Defendant
EQUIFAX INFORMATION SERVICES LLC

QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER P.C.
Jason S. Roberts, Bar No. 221978
jason.roberts@qslwm.com
10333 N. Meridian St., Suite 200
Indianapolis, IN 46290
Telephone: (317) 497-5600, Ext. 613
Fax: (317) 899-9348

Attorney for Defendant
TRANS UNION LLC

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. FACTUAL AND PROCEDURAL BACKGROUND ..... 1
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 4
A. CRA Defendants Are Not Liable Under the FCRA and CCRAA When a Plaintiff Alleges Their Reporting Is Inaccurate Based on a Legal Dispute with the Furnisher ..... 5
B. The FAC Must Be Dismissed Because It Alleges the CRA Defendants' Reporting is Inaccurate as a Result of a Legal Dispute Between Plaintiff and Citibank ..... 7
C. The New Allegations in the FAC Fail To Cure the Defects in the Original Complaint ..... 8
D. Plaintiff's Claims Should Be Dismissed Without Leave to Amend ..... 11
V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrews v. Equifax Info. Servs. LLC*,
700 F. Supp. 2d 1276 (W.D. Wash. 2010) ....5

*Arniella v. Trans Union, LLC.*,
No. 21-CV-23694, 2022 WL 2349016 (S.D. Fla. June 2, 2022) ....9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....2, 3

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ....11

*Bray v. Transunion, LLC*,
No. 23-CV-00197, 2024 WL 4150454 (N.D. Tex. Sept. 11, 2024) ....9

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .... passim

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) ....4

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ....4

*Galea v. Wells Fargo Bank, N.A.*,
388 F. Supp. 3d 1212 (E.D. Cal. 2019) ....5

*Gauci v. Citi Mortg.*,
No. 11-CV-01387, 2012 WL 1535654 (C.D. Cal. Apr. 30, 2012) ....6

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ....5

*Grigoryan v. Experian Info. Sols., Inc.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014) ....5

*Kennedy v. Bank of Am., N.A.*,
No. 12-CV-00952, 2012 WL 1458196 (N.D. Cal. Apr. 26, 2012) ....4

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988)....................3

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)....................12

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017)....................11

*Scroggins v. Equifax Info. Sols. LLC, et al.*,
No. 18-CV-04776, 2019 WL 3037588 (D. Ariz. July 11, 2019)....................3

*Shaw v. Experian Info. Sols., Inc.*,
891 F.3d 749 (9th Cir. 2018)....................5, 6

*Spira v. TransUnion, LLC*,
No. 23-CV-04319, 2024 WL 2221662 (S.D.N.Y. May 16, 2024)....................10, 11

*Torricellas v. Bedford*,
No. 14-CV-02489, 2017 WL 3275969 (C.D. Cal. May 10, 2017)....................4

*Tuttobene v. Trans Union, LLC*,
No. 19-CV-01999, 2021 WL 2188232 (D. Nev. May 28, 2021)....................6, 7, 10

**STATUTES**

15 U.S.C. § 1681....................5

California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code
§§ 1785.1, *et seq.*.................... passim

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*.................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 6(a)(1)....................3

Fed. R. Civ. P. 12(b)(6)....................3

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Trans Union LLC ("Trans Union") (together, the "CRA Defendants") hereby jointly move to dismiss Plaintiff Brian Bohan's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim on which relief may be granted. The motion is set for hearing on Friday March 13, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 13A of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, CA 92101.

The CRA Defendants' Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and such further argument and evidence as may be presented at the hearing of the motion.

Dated: February 3, 2026 JONES DAY

By: */s/ Nicholas J. Rawls*
Nicholas J. Rawls

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On December 30, 2025, this Court granted the CRA Defendants'[1] Motion to Dismiss Plaintiff Brian Bohan's ("Plaintiff") Original Complaint ("Compl.", Dkt. 1) for failure to state a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*; and California's Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code sections 1785.1, *et seq*. ("Order", Dkt. 24.) In dismissing the Original Complaint, the Court held that "[t]he central issue" in this case "is whether Plaintiff or Citibank is legally responsible for the late payments," and that this constituted "a 'collateral legal dispute' that CRAs need not delve into to satisfy their reporting obligations under the law." (*Id.* at 3.) Try as he might to cure the deficiencies identified by the Court, Plaintiff's First Amendment Complaint ("FAC", Dkt. 25) once again makes clear that the "central issue" in the case is a legal dispute between Plaintiff and Citibank and that this lawsuit is nothing more than an improper "vehicle for collaterally attacking the legal validity of [his] consumer debts." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

The FAC should be dismissed in its entirety since, like the Original Complaint, it fails to adequately plead facts upon which relief may be granted. There is still no dispute that the CRA Defendants' accurately reported that Plaintiff's payments were made late. (*See* FAC ¶ 27 ("In or about December 2024, Mr. Bohan realized that his credit card was not being paid.").) Instead, Plaintiff doubles down on his unavailing arguments that the CRA Defendants' reporting is somehow misleading because they failed to make a legal determination as to whether Plaintiff or Citibank was responsible for the lateness of the payments. Because this Court and the Ninth Circuit have been clear that this is insufficient to state a claim for relief, the FAC should be dismissed in its entirety without leave to amend.

## II. FACTUAL AND PROCEDURAL BACKGROUND

While Plaintiff has curiously removed certain facts from the FAC, the principal allegations

[1] The "CRA Defendants" are Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union").

in this case remain unchanged from the Original Complaint.[2] Upon opening a Citibank Simplicity credit card in October 2024, Plaintiff contacted Citibank "to set up auto pay in the amount of the minimum amount due each month." (FAC ¶ 22.) "Mr. Bohan received confirmation that the auto pay was established to pay the minimum amount due each month using the routing and checking account number Mr. Bohan provided." (*Id.* ¶ 23.) Although he did not receive any account statements from Citibank showing payments were being made, "[a] few months went by during which Mr. Bohan believed the auto pay established was paying his Citibank credit card bill." (*Id.* ¶¶ 25-26.) "In or about December 2024, Mr. Bohan realized that his credit card was not being paid as arranged." (*Id.* ¶ 27.) Around that time, Plaintiff contacted Citibank and "updated his auto pay information." (*Id.* ¶ 28.) On January 13, 2024, Plaintiff spoke with a Citibank representative who stated there had been a "miscommunication" between the parties "and misrepresentation during the call" where Plaintiff attempted to set up autopay. (*Id.* ¶¶ 29-30.) Plaintiff does *not* allege that Citibank admitted it was legally responsible for the late payment. (*See generally* FAC.) Because the payments were not timely made, "Citibank reported Mr. Bohan as 30 and 60 days late in payments on his credit report." (*Id.* ¶ 32.)

"[I]n late 2024," Plaintiff filed a dispute with Experian and Equifax. (*Id.* ¶¶ 40-41.) Plaintiff followed up with another dispute to each of the CRA Defendants on March 18, 2025, explaining that Citibank told him that the autopay process had been set up, but that because of "some error . . . on Citibank's side . . . the payment was never processed." (*Id.* ¶¶ 42-43.) Plaintiff told the CRA Defendants that Citibank never informed him of the issue prior to reporting the delinquencies and that he "never received statements reflecting a delinquency for the account." (*Id.* ¶¶ 44, 45, 49.)

The CRA Defendants contacted Citibank regarding Plaintiff's dispute, which verified the accuracy of the 30- and 60-day late reporting. (*Id.* ¶ 51.) Although Plaintiff does not dispute that the payments were, in fact, late, he contends that the CRA Defendants' reporting was "misleading"

[2] For the limited purpose of this Motion to Dismiss, the CRA Defendants assume the facts alleged in the FAC are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).In so doing, however, the CRA Defendants do not concede or admit any of Plaintiff's allegations.

because "(1) Citibank represented to Mr. Bohan that autopay was set up; (2) Mr. Bohan was not receiving statements or notifications that the account was not being paid; (3) Mr. Bohan had the available funds in his account at the time payment was due. (*Id.* ¶ 6.)

The CRA Defendants moved to dismiss Plaintiff's Original Complaint on September 24, 2025. (Mot., Dkt. 20.) On December 30, 2025, the Court granted the Motion with leave to amend. (Order 5.) The Court noted that the Original Complaint alleged, "in conclusory fashion[,] that the CRA Defendants" did not investigate the alleged errors in their reporting "despite knowing they were a result of Citibank's error." (*Id.* (quoting Compl. ¶ 4).) Although the Court expressed skepticism as to "how an investigation . . . would advance Plaintiff's claim," it allowed Plaintiff to "file an amended complaint within 21 days of the filing of [the] Order." (*Id.*) On January 21, 2026, or 22 days after the Court's Order, Plaintiff filed the FAC. ((FAC); *see* Fed. R. Civ. P. 6(a)(1).)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While all material allegations must be taken as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*, 550 U.S. at 555). Allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences are . . . insufficient to defeat a motion to dismiss for failure to state a claim." *Scroggins v. Equifax Info. Sols. LLC, et al.*, No. 18-CV-04776, 2019 WL 3037588, at *1 (D. Ariz. July 11, 2019) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Additionally, "[w]hile the Court does not determine the truth of the allegations

on a motion to dismiss, the Court need not accept allegations that are contradicted by other allegations in the complaint." *Kennedy v. Bank of Am., N.A.*, No. 12-CV-00952, 2012 WL 1458196, at *4 (N.D. Cal. Apr. 26, 2012).

If a motion to dismiss is granted, a court does not need to grant leave to amend if it determines the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Courts routinely dismiss complaints with prejudice when the plaintiff was previously granted leave to amend. *See, e.g.*, *Torricellas v. Bedford*, No. 14-CV-02489, 2017 WL 3275969, at *15 (C.D. Cal. May 10, 2017); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (recognizing that "that a district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." (citation modified)).

## IV. ARGUMENT

Like its failed predecessor, the FAC should be dismissed in its entirety, without leave to amend, for failure to state a claim under the FCRA and CCRAA. As the Court made clear in its Order dismissing the Original Complaint, Plaintiff must allege that the CRA Defendants' reporting is either inaccurate or misleading. (Order 2.) But Plaintiff has failed to cure the core deficiency in his prior pleading. Notwithstanding the minor changes made in the FAC, "[t]he central issue" in this case remains "whether Plaintiff or Citibank is legally responsible for the late payments." (*Id.* at 3.) Even with the additional allegations in the FAC, it remains the case that "Citibank may have caused the autopay misstep that resulted in late payments but Plaintiff may be ultimately responsible for ensuring that his debt is timely paid regardless of an autopay error." (*Id.*) Fundamentally, it is still true that "[T]he status of Plaintiff's 'obligation to pay the debt' . . . requires a 'legal determination' that is not" the CRA Defendants' "responsibility to report" under the FCRA and CCRAA. (*Id.*) Consequently, Plaintiff's claims against the CRA Defendants constitute "a 'collateral legal dispute' that CRAs need not delve into to satisfy their reporting obligations under the law." (*Id.*) Because Plaintiff has already had an opportunity to cure these deficiencies via an amended complaint, the FAC should be dismissed with prejudice.

### A. CRA Defendants Are Not Liable Under the FCRA and CCRAA When a Plaintiff Alleges Their Reporting Is Inaccurate Based on a Legal Dispute with the Furnisher

The purpose of the FCRA and CCRAA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (citation omitted). Under these statutes, the role of a CRA is to "simply collect and report information furnished by others." *Carvalho*, 629 F.3d at 891. In their role as data repositories, CRA Defendants are required to ensure the accuracy of their reporting, 15 U.S.C. § 1681e(b), and must conduct a reasonable reinvestigation of disputed information, 15 U.S.C. § 1681i(a)(1)(A).[3] Importantly, however, "inaccurate information in a credit report alone is not a violation of the FCRA: *the FCRA is not a strict liability statute*." *Andrews v. Equifax Info. Servs. LLC*, 700 F. Supp. 2d 1276, 1278 (W.D. Wash. 2010) (citation modified). This makes good sense as a "CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to '*re* investigate' a matter once already investigated in the first place." *Gorman*, 584 F.3d at 1156-57 (quoting 15 U.S.C. § 1681i(a)(1)) (emphasis in *Gorman*).

Although the presence of an inaccuracy, without more, will not give rise to liability, "a prima facie showing of inaccurate reporting by the CRA" remains a necessary (albeit insufficient) element of an FCRA or CCRAA claim. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (citation modified); *see also Carvalho*, 629 F.3d at 890. Information is "inaccurate where it either is patently incorrect or is misleading in such a way and to such an extent that it can

---

[3] The standards under the CCRAA are the same as those applicable under the FCRA. "[B]ecause the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3 (2003)). As a result, "[c]ourts have applied the 'patently incorrect or materially misleading' standard indiscriminately to claims arising under provisions of the FCRA and CCRAA that involve the accuracy of information." *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1061 (C.D. Cal. 2014) (citing *Carvalho*, 629 F.3d at 890); *see also Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1217 (E.D. Cal. 2019) ("A plaintiff must show information in her credit report is inaccurate to state a claim under California Civil Code Section 1785.16 or Section 1785.14." (citation modified)).

be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 756 (citation modified).

Further, a CRA is not liable under the FCRA or CCRAA when the allegedly inaccurate or misleading reporting arises from a legal dispute between a consumer and a furnisher. *Carvalho*, 629 F.3d at 891-92. As many courts have observed, "credit reporting agencies are not tribunals," and thus are not required to "provide a legal opinion on the merits" of a dispute between a consumer and the furnisher. *Id*. Instead, "determining whether the consumer has a valid defense is a question for a court to resolve in a suit against the creditor, not a job imposed upon consumer reporting agencies by the FCRA." *Id*. at 892 (citation modified). When a plaintiff "disputes the legal validity of a debt" under the FCRA and CCRAA, they "should do so directly at the furnisher level," *Gauci v. Citi Mortg.*, No. 11-CV-01387, 2012 WL 1535654, at *6 (C.D. Cal. Apr. 30, 2012) (citing *Carvalho*, 629 F.3d at 891), and not via "collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims," *Carvalho*, 629 F.3d at 891.

Additionally, the FCRA and CCRAA do not require CRA Defendants to refrain from "report[ing] any information about the disputed item simply because the consumer asserts a legal defense." *Carvalho*, 629 F.3d at 892. Indeed, the law expressly allows consumers to provide context to any CRA reporting, since "consumers who are dissatisfied by a reinvestigation" may "file a brief explanatory statement to be reported along with the disputed item." *Id*. (citing 15 U.S.C. § 1681i(b)-(c); Cal. Civ. Code § 1785.16(f)-(g)). Consequently, a consumer claiming an item on their credit report is misleading on the grounds that it fails to identify that it arises from a legal dispute with a furnisher has the option of providing potential creditors with "both sides of the story," thereby allowing them to "reach an independent determination of how to treat a specific, disputed account" for the purpose of extending credit. *Id*. (citation modified). Ultimately, a CRA "does not violate" the FCRA or CCRAA "by accurately reporting a late payment even if the consumer has a good explanation for why the payment was late." *Tuttobene v. Trans Union, LLC*, No. 19-CV-01999, 2021 WL 2188232, at *2 (D. Nev. May 28, 2021).

///

///

### B. The FAC Must Be Dismissed Because It Alleges the CRA Defendants' Reporting is Inaccurate as a Result of a Legal Dispute Between Plaintiff and Citibank

Because this case arises from a legal dispute between Plaintiff and Citibank, the FAC does not, and cannot, make the necessary prima facie showing of an "inaccuracy" in the CRA Defendants' reporting. Plaintiff does not allege the CRA Defendants' reporting was "patently incorrect" since he admits that his payments were not timely made. (FAC ¶ 27 ("In or about December 2024, Mr. Bohan realized that his credit card was not being paid as arranged".) Instead, the FAC merely repeats the Original Complaint's allegations that the CRA Defendants' reporting is misleading because responsibility for the late payment rests with Citibank and not with Plaintiff. (*See id.* ¶ 39 ("Citibank continues to report to the credit reporting agencies these misleading delinquencies that were the result of Citibank's error, not Mr. Bohan.").) This constitutes "a 'collateral legal dispute' that CRAs need not delve into to satisfy their reporting obligations under the law." (Order 3.)

The FAC's allegations are substantively identical to those that the Court has already concluded are insufficient to state a claim for relief. (*See id.* at 3-5.) In granting the CRA Defendants' first Motion to Dismiss, the Court recognized that this case arises from a legal dispute since, even accepting the allegations as true, "Citibank may have caused the autopay misstep that resulted in late payments but Plaintiff may be ultimately responsible for ensuring that his debt is timely paid regardless of an autopay error." (*See id.* at 3.) The same is true under the FAC. Despite the new allegations in the FAC, Plaintiff still alleges that the reporting is only inaccurate because Citibank, and not Plaintiff, was responsible for the late payment. (*See* FAC ¶ 39.) As a result, the purportedly misleading nature of the CRA Defendants' reporting still turns on "the status of Plaintiff's 'obligation to pay the debt' . . . which requires a 'legal determination'" to resolve. (*See* Order 3.) Consequently, "[t]his action is" still "collateral to that dispute, and the CRA Defendants are not charged under the FCRA or CCRAA with determining who bears ultimate responsibility for a late payment . . . ." (*See id.* at 5.) At bottom, Plaintiff's allegations do not, and cannot, give

rise to liability under the FCRA and CCRAA. (*Id.*)

This conclusion is well supported by the relevant case law. In *Carvalho*, the Ninth Circuit made clear that plaintiffs do not state a claim under the FCRA or CCRAA by alleging that "credit reporting agencies unfairly malign the creditworthiness of innocent consumers by reporting disputed debts without undertaking a searching inquiry into the consumer's legal defenses to payment." 629 F.3d at 891. Indeed, "[a] CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits." *Id.* at 892. "Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense," since "the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Id.* (citation modified); (*see also* Order 3-4.). Because "[t]he central issue" in this case remains "whether Plaintiff or Citibank is legally responsible for the late payments," the FAC once again fails state a claim for relief. (*See* Order 3.)

### C. The New Allegations in the FAC Fail to Cure the Defects in the Original Complaint

Plaintiff's new allegations only underscore the fatal weaknesses in the FAC. For example, the FAC alleges for the first time that "Mr. Bohan did not enter into any agreement with Citibank" and that he "did not sign any agreement pertaining to the autopay, nor was he ever provided any terms and conditions related to the auto pay service." (FAC ¶ 24.) The fact that Plaintiff now alleges there was no autopay agreement in place (even though he assumed there was), does not change "[t]he central issue" in this case. (*See* Order 3.) Plaintiff still claims that the CRA Defendants' reporting is misleading because he was not responsible for ensuring he made monthly payments given Citibank's representations that autopay was set up. (*See* FAC ¶¶ 22-23.) Thus, whether the dispute over responsibility for the late payments arises from Citibank's alleged representations to Plaintiff or the terms of an autopay agreement, "determining whether Plaintiff or Citibank bears ultimate responsibility for a late payment" still "calls for a legal assessment" as to who was responsible for making the monthly payment. (*See* Order 5.) This is something that

"CRAs need not delve into to satisfy their reporting obligations under the law." (*Id.* at 3.); *see also Carvalho*, 629 F.3d at 892.

Additionally, notwithstanding the allegations about the lack of an autopay agreement, this case remains "on all fours" with *Arniella v. Trans Union, LLC*. (*See* Order 4.) In *Arniella*, as here, the plaintiff alleged that despite the furnisher's promise to withdraw funds from the consumer's account every month, the furnisher "failed to deduct the March 2020 payment, resulting in Plaintiff's payment being late." No. 21-CV-23694, 2022 WL 2349016, *3 (S.D. Fla. June 2, 2022). The court dismissed the plaintiff's claims, recognizing that "circuit and district courts around the country have dismissed actions against CRA's similar to the one at hand, in which consumers alleged nonparty furnishers were at fault for the reported information being inaccurate." *Id.* at *2. Critically, "[e]ven where the dispute between the consumer and the furnisher *was not deemed 'contractual' in nature*, the courts held the claims against the CRA's were subject to dismissal as collateral attacks on legal claims." *Id.* (citation modified). As a result, even if there was no express contract between Plaintiff and Citibank in this case, *Arniella* makes clear that there is no liability where, as here, CRA Defendants are called upon to make a legal determination as to whether a consumer of furnisher was responsible for a late payment. *Id.*

Next, the FAC's allegations regarding the adequacy of the CRA Defendants' investigations only show that the Court's skepticism as to "how an investigation (or perhaps a more thorough investigation) would advance Plaintiff's claim" was fully justified. (*See* Order at 5.) The FAC claims "[u]pon information and belief," that the CRA Defendants "did ask [sic] Citibank whether Mr. Bohan had called to set up autopay; whether Citibank represented to Mr. Bohan that Citibank had setup autopay; whether Citibank's employee had caused the autopay to malfunction; or whether Citibank had an agreement in place relating to the autopay agreement." (FAC ¶ 52.) Importantly, however, "[f]actual inaccuracies, not legal disputes, trigger CRA reinvestigation duties." *Bray v. Transunion, LLC*, No. 23-CV-00197, 2024 WL 4150454, at *4 (N.D. Tex. Sept. 11, 2024).

Here, there is no dispute that Citibank has denied that it is legally responsible for the late payment. (FAC ¶ 37 ("Citibank confirmed the accuracy of the late reporting to the credit bureaus

and declined to remove the 30- and 60-day late marks from his credit report.").) Consequently, even if the CRA Defendants conducted an investigation along the lines that Plaintiff suggests, this case would still require a legal determination as to whether Plaintiff or Citibank was responsible for the late payments, which "is a question for a court to resolve in a suit against the creditor, not a job imposed upon consumer reporting agencies by the FCRA." *See Carvalho*, 629 F.3d at 892 (citation modified). Further, even if an additional investigation could have uncovered information that supported Plaintiff's legal argument, Plaintiff could still not state a claim against the CRA Defendants, since their obligation to resolve a legal dispute does not turn on the strength of a plaintiff's legal argument. *See id.* at 891 ("a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, *regardless of how legally sound her reasons for default are*" (emphasis added)). Indeed, the court in *Tuttobene* held that a CRA "does not violate" the FCRA "by accurately reporting a late payment *even if the consumer has a good explanation for why the payment was late*." 2021 WL 2188232, at *2 (emphasis added).

Finally, the FAC now expressly alleges that the CRA Defendants' "reporting was misleading because . . . Mr. Bohan had the available funds in his account at the time payment was due."[4] (FAC ¶ 6.) This argument has been conclusively rejected in other cases involving virtually identical facts. For example, in *Spira v. TransUnion, LLC*, the plaintiff "set up autopay on his account with" the furnisher, LoanCare, "to make automatic monthly payments towards his mortgage." No. 23-CV-04319, 2024 WL 2221662, at *1 (S.D.N.Y. May 16, 2024). As here, the plaintiff sued the CRA Defendants alleging that "LoanCare 'did not take' his automatic payments for November 2022 or December 2022" and thus "his credit report was inaccurate because LoanCare . . . improperly failed to accept mortgage payments from him and reported a 60-day delinquency to the CRA Defendants." *Id.* As in this case, the plaintiff's dispute letter to the CRA Defendants claimed that his monthly "payments were not drafted by the bank, even though he never

---

[4] The Original Complaint alleged that "some error happened on Citibank's side as the payment was never processed despite Mr. Bohan having the available funds in his account." (Compl. ¶ 38.) The FAC makes clear, however, that the alleged availability of funds in his account is one of bases for the allegedly misleading reporting by the CRA Defendants.

requested this and his autopay was still set up." *Id.* (citation modified).

The plaintiff in *Spira* argued "that marking his payments late under these circumstances" was misleading because it did "not accurately reflect [his] willingness and ability to pay," and that a consumer's willingness and ability to pay is a "key indicia of creditworthiness and the driver behind the accuracy requirement of the FCRA." *Id.* at *4. The court rejected this argument, finding that it was "insufficient to plead his credit report was 'materially misleading.'" *Id.* (quoting *Braun v. Trans Union LLC*, No. 19-CV-06098, 2019 WL 13083348, at *3 (C.D. Cal. Oct. 10, 2019)). The court noted that the plaintiff "consistently frame[d] his arguments in terms of 'fault,'" and just like this case, "the crux of Plaintiff's argument [was] that the deficiency should not have been reported because it was not his fault that his mortgage went unpaid—LoanCare failed to process his payments." *Id.* at *3-4. The court concluded that issues of "[c]ulpability and fault" for failing to process the payments were "simply irrelevant in answering the threshold question at issue—whether the CRA Defendants reported an inaccuracy." *Id.* at *4.

Ultimately, the furnisher's "reasons for not processing Plaintiff's mortgage payments did not change the fact that Plaintiff did not timely make payments" as accurately reported by the CRA Defendants. *Id.* at *5. The Court should reach the same conclusion here. As in *Spira*, "[r]egardless of his good faith, Plaintiff's payments were not applied to" his Citibank Simplicity credit card "and his debt went unpaid." *Id.* at *4. These "are the facts [Citibank] reported to the CRA Defendants and that Plaintiff represented to them in his dispute letters." *Id.* Consequently, there is no dispute that CRA Defendants "accurately reported the deficiency on his" debt. *See id.*

### D. Plaintiff's Claims Should Be Dismissed Without Leave to Amend

Although the Federal Rules of Civil Procedure state that leave to amend "shall be freely given when justice so requires," the Ninth Circuit has recognized that "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (quoting Fed. R. Civ. P. 15(a)). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation

modified). A "district court's discretion to deny leave to amend is particularly broad where," as here, the "plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (citation omitted).

Given the same deficiencies identified in the Court's December 30, 2025 Order are present in the FAC, Plaintiff cannot add any new allegations that would make his claims viable. Plaintiff has now been given two bites at the apple and has been unable to state a claim against the CRA Defendants under the FCRA or CCRAA. Because any amendment would be futile, Plaintiff's claims should be dismissed without leave to amend. *See Carvalho*, 629 F.3d at 893 ("Because we hold that Carvalho cannot make a prima facie case of inaccurate reporting, we conclude that amendment to include other claims requiring inaccuracy would be futile.")

## V. CONCLUSION

For the foregoing reasons, the CRA Defendants respectfully request Plaintiff's First Amended Complaint be dismissed, with prejudice, in its entirety.

Dated: February 3, 2026

JONES DAY

By: */s/ Nicholas J. Rawls*
Nicholas J. Rawls

Attorney for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

Dated: February 3, 2026

QUILLING SELANDER LOWNDS WINSLETT & MOSER PC

By: */s/ Jason Roberts*
Jason Roberts

Attorney for Defendant
TRANS UNION LLC

Dated: February 3, 2026 NOKES AND QUINN

By: */s/ Thomas P. Quinn Jr.*
Thomas P. Quinn Jr.

Attorney for Defendant
EQUIFAX INFORMATION SERVICES, LLC

**SIGNATURE CERTIFICATION**

I hereby certify that the content of this document is acceptable to counsel for Trans Union LLC and Equifax Information Services, LLC, and that I have obtained their authorization to affix their electronic signature to this document.

Dated: February 3, 2026 JONES DAY

By: */s/ Nicholas J. Rawls*
Nicholas J. Rawls

Attorney for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.